**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

FILED

DEC 2 7 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

VRCOMPLIANCE LLC, &          )
EYE STREET SOLUTIONS LLC,    )
                             )
    Plaintiffs,          )
                             )
v.                           )      Civil Action No.: 1:11-cv-1088
                             )
HOMEAWAY, INC.,              )
HOMEAWAY.COM, INC, *et al.*, )
                             )
    Defendants.          )

## MEMORANDUM OPINION

This matter comes before the Court on Defendants Homeaway, Inc. and Homeaway.com,

Inc.'s (collectively "Homeaway" or "Defendants") motion to dismiss for improper venue

pursuant to Federal Rule 12(b)(3) or, in the alternative, transfer to the Western District of Texas

(Dkt. No. 10). This matter came before the Court for oral argument on December 16, 2011. It has

been briefed and is ripe for disposition. For the reasons stated in open Court and those that

follow, Defendants' Motion is granted in part and denied in part. This matter is stayed pending

the resolution of a parallel action in the state of Texas.

### I.    Background

#### a.  Factual Background

Homeaway runs multiple websites to facilitate the private rental of vacation properties.

Compl. ¶ 9. Income received by private rental is a taxable event in many jurisdictions. Compl. ¶

10. In many Colorado ski towns, for example, vacation rental owners are required to remit

lodging taxes and pay business license fees. Jacks Decl., Ex. 5 at 3. Some ski towns estimate

they lose hundreds of thousands of dollars in sales tax revenue from non-compliant vacation

rental owners. Jacks Decl., Ex. 6 at 1.

In response, the Colorado Association of Ski Towns ("CAST") contracted with Plaintiff VRCompliance LLC ("VRCompliance") to investigate the tax compliance of its rental owners. Compl. ¶ 17. VRCompliance uses software ("Compliance Software") to investigate the tax compliance of individuals renting property. *Id.* Plaintiff Eye Street Solutions, LLC ("Eye Street") developed the Compliance Software, which uses publically available data to assist localities in comparing rental records to taxation records. Compl. ¶¶ 17, 19.

In December 2010, Homeaway sent CAST and Eye Street a cease and desist letter. Compl. ¶ 20; Compl. Ex. 1. It requests CAST and Eye Street cease "scraping" Homeaway's websites for proprietary consumer information in violation of Homeaway's Terms of Service and federal and state law. Compl. Ex. 1. "Scraping" is a computer software technique of extracting information from a website by using a bot that automatically harvests information from the website. Compl. ¶ 21. Plaintiffs repeatedly deny the Compliance Software "scrapes" any information from the Homeaway sites. *E.g.*, Compl. ¶ 22. Indeed, Plaintiffs deny the Compliance Software has even visited the Homeaway sites since the initial December 2010 cease and desist letter. *Id.*

On September 28, 2011, Defendants sent an additional letter to CAST. Compl. ¶ 24; Compl. Ex. 3. The same day, Homeaway sent VRCompliance and Eye Street a second demand letter. Compl. ¶ 23; Compl. Ex. 2. The September 2011 letters ("Demand Letters") focus on the fact that users of any Homeaway site are bound by its terms and conditions ("Terms and Conditions"), which prohibit "any right of collection, aggregation, copying, scraping, duplication, display or derivative use of the Site nor any right of use of data mining, robots, spiders or similar data gathering and extraction tools without our prior written permission."

Compl. Exs. 2, 3. The Demand Letters indicate that violation of this provision of the Terms and

Conditions

> potentially subjects CAST, its members and their respective agents and
> contractors, including Eye Street Solutions, LLC, and VRCompliance, LLC, to
> civil liability under the Texas Liability Act, Sec. 134.003, Texas Civil Practice &
> Remedies Code, the Federal Computer Fraud and Abuse Act, 28 U.S.C. Sec.
> 1030, as well as copyright infringement under federal copyright law, and for
> breach of contract, misappropriation of trade secrets, civil conspiracy, conversion
> and trespass under state common law principles.

Compl. Ex. 2 at 2-3.

### b. Procedural Background

Defendants filed suit in Texas State Court on October 3, 2011 against VRCompliance,

Eye Street, and CAST (the "Texas Suit"). In the Texas Suit, Defendants allege breach of

contract, misappropriation of trade secrets, violations of the Texas Theft Liability Act, and

conversion. Homeaway also requests imposition of a constructive trust and injunctive relief. Eye

Street and VRCompliance answered Homeaway's complaint with a general denial on December

5, 2011. VRCompliance and Eye Street also asserted five counterclaims: tortious inference with

existing contractual relations, tortious inference with a prospective contract, defamation,

business disparagement, and violations of the Texas Deceptive Trade Practices Act.

Plaintiffs VRCompliance and Eye Street[1] filed suit against Homeaway in federal district

court in the Eastern District of Virginia three days later on October 6, 2011 (the "Virginia Suit").

Plaintiffs requested nine counts of relief—seven of which substantially overlap with the claims

and counterclaims in the first-filed Texas Suit. Whereas the Texas Suit requests affirmative

relief, the Virginia Suit contains four requests for declaratory relief. The Virginia Suit's nine

counts include: declaration of rights, Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

declaration of rights, copyright infringement; declaration of rights, trade secret misappropriation;

---

[1] CAST is not a party to the Virginia Suit.

declaration of rights, breach of contract; declaration of rights, violation of the Texas Theft

Liability Act; tortious interference with existing contractual relations, tortious interference with

prospective business relations or economic advantage and prospective contractual relationship,

defamation, and violation of the Virginia Consumer Protection Act. In sum, only two of the nine

claims alleged in the Virginia Suit are not substantially duplicated in the Texas Suit.[2]

## II.     Legal Standard

District courts enjoy substantial discretion in determining whether to entertain declaratory

judgment actions. *See* 28 U.S.C. § 2201(a) ("[A]ny court of the United States, upon the filing of

an appropriate pleading, *may* declare the rights and other legal relations of any interested party

seeking such declaration. . . .") (emphasis added); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286

(1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on

federal courts unique and substantial discretion in deciding whether to declare the rights of

litigants."); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942) (finding that even

though the district court had jurisdiction under the Federal Declaratory Judgment Act, "it was

under no compulsion to exercise that jurisdiction").[3] Although the discretion afforded to district

courts is "not unbounded, a district court's discretion is 'especially crucial when, as here, a

parallel or related proceeding is pending in state court.'" *Riley v. Dozier Internet Law, PC*, 371

Fed. Appx. 399, 401 (4th Cir. 2010) (unpublished) (internal citations omitted) (quoting *New*

---

[2] The Texas suit does not include claims based upon the Computer Fraud and Abuse Act or copyright infringement, while the Virginia Suit does not include a request for imposition of a constructive trust. Whereas the Texas Suit includes a count for violation of the Texas Deceptive Trade Practices Act, the Virginia Suit alleges a violation of the Virginia Consumer Protection Act. The remainder of the Texas Suit's claims explicitly duplicate the claims and declarations of right sought in the Virginia Suit.

[3] "The broad discretionary *Brillhart/Wilton* standard governing a district court's determination whether to exercise jurisdiction over a declaratory judgment action in which there are parallel state court proceedings differs from the *Colorado River* exceptional circumstances standard . . . ." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 n.7 (4th Cir. 2006). The differing standards stem from the "substantial discretion" afforded to district courts by the Declaratory Judgment Act itself. *Wilton*, 515 U.S. at 286-87. Accordingly, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288.

*Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 297 (4th Cir. 2005)); *see also Alfa Laval, Inc. v. Travelers Cas. and Sur. Co.*, No. 3:09-CV-733, 2010 WL 2293195, at *3 (E.D. Va. June 3, 2010). Where a parallel state case is pending, "district courts have 'wide discretion' to decline jurisdiction." *Riley*, 371 Fed. Appx. at 401-02 (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996)); *see also Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992) ("For the federal court to charge headlong into the middle of a controversy already the subject of state court litigation risks '[g]ratuitous interference with the orderly and comprehensive disposition of [the] state court litigation.'" (quoting *Brillhart*, 316 U.S. at 495)).

District courts are not without guidance when determining whether to stay a declaratory action pending resolution of a state court proceeding.[4] Indeed, the Fourth Circuit articulated a four factor test, premised upon "consideration of federalism, efficiency, and comity." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994), *overruled on other grounds by Wilton*, 515 U.S. 277. The four factors include:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal courts; and (4) whether the federal action is mere procedural fencing in the sense that the action is merely the product of forum-shopping.

*United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493-94 (4th Cir. 1998) (internal quotations omitted) (the "*Kapiloff* Factors"). The Court is cognizant that the inclusion of nondeclaratory counts in the case at bar presents an added dimension to the traditional *Kapiloff* analysis. In such a situation, the Fourth Circuit preached caution but declined to decide whether the *Colorado*

---

[4]Although courts apply the *Brillhart/Wilton* Test in deciding whether to stay or dismiss an action, stay is the more appropriate course of action here. *See Wilton*, 515 U.S. at 288 n.2 ("[A] stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy.").

*River* or *Brillhart/Wilton* standard governs the decision to stay nondeclaratory counts of a mixed complaint. *Gross*, 468 F.3d at 211 ("Our jurisprudence suggests that, in a 'mixed' complaint scenario, the *Brillhart/Wilton* standard does not apply, at least to the nondeclaratory claims . . . [however,] [w]e need not express a definitive view on this point. . . .").

Nonetheless, where the declaratory claims require resolution prior to the adjudication of the remaining nondeclaratory counts, two recent courts have found application of the *Brillhart/Wilton* standard appropriate. *See Riley*, 371 Fed. Appx. at 404 n.2 (finding the inclusion of "dependent" nondeclaratory "requests for relief does not suffice to remove a plaintiff from the ambit of the *Brillhart/Wilton* rule."); *Alfa Laval, Inc.*, 2010 WL 2293195, at *5 (finding the presence of nondeclaratory claims did not change the Court's conclusion that stay was appropriate under *Brillhart/Wilton* "when the question of liability is driven by the relief fashioned on the declaratory claims").

## III.    Analysis

Analysis of the *Kapiloff* Factors guides the Court to stay this matter. Though the complaint mixes requests for declaratory and nondeclaratory relief, stay of this matter in its entirety is appropriate because the nondeclaratory counts are dependent on the Court's adjudication of the Plaintiffs' declaratory requests.

### a.    The *Kapiloff* Factors Weigh in Favor of Stay

The four-factor *Kapiloff* test weighs decidedly in favor of staying this action. First, Texas has a strong interest in deciding the issues of this case in its courts. In fact, depending upon the resolution of a single issue, adjudication of the case by Texas courts may become mandatory. Central to the dispute between the Parties is the applicability of Homeaway's Terms and Conditions to the Defendants. If found binding upon the Defendants, the Terms and Conditions

6

designate the courts of Travis County, Texas as the "exclusive forum and venue for any legal dispute." Jacks Decl., Ex. 2 ¶ 15.[5] Additionally, if found applicable, the Terms and Conditions require adjudication under "the laws of Texas." *Id*. At this preliminary stage, this Court finds it likely that Homeaway would prove the Terms and Conditions bind the Defendants.[6] Such a finding would tilt the Texas court's interest in adjudicating this matter decidedly. Indeed, should the Terms and Conditions apply, resolution of this dispute by a Texas court would become obligatory and this Court would be forced to dismiss or transfer the action.

Whatever its resolution, whether the Terms and Conditions bind the Plaintiffs is a complex issue, which Texas courts have a strong interest in deciding. *See Mitcheson*, 955 F.2d at 237 ("There exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state when state law controls the resolution of the case."). The issue blends complex factual, legal, and technological issues. To this Court's knowledge, the propriety of "browse-wrap" terms and conditions, such as those Homeaway suggests bind the Plaintiffs here, has not been addressed by the Supreme Court of Texas.[7] *C.f. Barnett v. Network Solutions*, 38 S.W.3d 200, 204 (Tex. App. 2001) (dismissing an action filed

---

[5] In pertinent part, the Terms and Conditions provide: "[Y]ou irrevocably agree that any cause of action you may submit in connection with your use of this site or pursuant to these terms will be filed in Travis County, Texas which you acknowledge and agree will be the exclusive forum and venue for any legal dispute between you and us. You also agree that any dispute between you and us will be governed by the laws of Texas, without regard to conflict of laws principles." Jacks Decl.., Ex. 2 at ¶ 15.

[6] The Court does not and cannot finally decide the applicability of Homeaway's Terms and Conditions at this stage. The Parties presented contradictory affidavits on the issue. Though the Court's experience suggests Homeaway's view will ultimately prevail, the Court cannot make such a finding at this time without the benefit of discovery and further adjudication.

[7] Based upon this Court's research, the issue has been mentioned only briefly by a Texas Court of Appeals. *See Hotels.com, LP v. Canales*, 195 S.W.3d 147, 154-56 (Tex. Ct. App. 2006) (remanding for further examination of Hotels.com's hybrid click-wrap and browse-wrap user agreement and its application to prospective members of a class action). However, browsewrap agreements have been addressed by several Texas federal district courts. *See, e.g.*, *Southwest Airlines Co. v. Boardfirst, LLC*, No. 3:06-cv-0891, 2007 WL 4823761, at *5 (N.D. Tex. Sept. 12, 2007) (finding browsewraps enforceable upon a showing that the defendant had actual or constructive knowledge of the terms and conditions); *Southwest Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 441 (N.D. Tex. 2004) (finding issue of browsewrap agreement's enforceability an issue of fact the court could not determine at the motion to dismiss stage).

in Texas when the Plaintiff had been required to scroll through and accept the website's contract, which contained a Virginia forum selection clause). This issue and other issues of state law presented in this case "may well be difficult, complex, or unsettled, and a federal court should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law." *Riley*, 371 Fed. Appx. at 403 (internal quotations and citations omitted). Accordingly, the Court finds the first factor weighs in favor of stay.

Second, the Texas state court will likely "resolve the issues more efficiently" than this court. *Kapiloff*, 155 F.3d at 494. "As a general rule, 'the first suit should have priority, absent the showing of balance of convenience in favor of the second action.'" *Riley*, 371 Fed. Appx. at 403 (quoting *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)). The Texas Suit was filed three days before the Virginia Suit. VRCompliance and Eye Street filed their answer on December 5, 2011 and at oral argument, counsel for the Defendants indicated their expectation that the Texas Suit could proceed to trial in less than six months.[8] It arose from the same controversy as the Virginia Suit and includes all of the Virginia Suit's parties. Of the Virginia Suit's nine claims, six are explicitly mirrored in the Texas Suit[9] and a seventh is substantially similar to its Texas counterpart.[10] Additionally, the Texas Suit is broader in that it includes an additional party and seeks additional relief. The Texas Suit includes CAST while the Virginia Suit does not. The Texas Suit also includes a request for a constructive trust that is not included in the Virginia Suit. In sum, an inquiry into "the scope of the pending state court action proceeding" convinces the Court the suit "can better be settled in the proceeding pending before

---

[8] Counsel for the Plaintiffs did not share opposing counsel's optimism, but did not provide the Court with reason to believe the Texas Suit would not proceed expeditiously.

[9] Of course, the Texas Suit requests affirmative relief for three claims of the overlapping claims whereas the Virginia Suit requests solely declaratory relief.

[10] Whereas the Virginia Suit includes a claim under the Virginia Consumer Protection Act, the Texas Suit includes a counterclaim under the Texas Deceptive Practices Act.

the state court." *Brillhart*, 316 U.S. at 495. The Court thus concludes the second factor favors stay.

As to the third factor, permitting this action to go forward would result in unnecessary entanglement between the federal and state court systems. As discussed above, both the Texas and Virginia Suits involve "overlapping issues of fact [and] law." *Kapiloff*, 155 F.3d at 494. Both suits arise from the same conduct, by the same parties, over the same time period. Both seek a broad determination regarding the legality of VRCompliance and Eye Street's use of the Homeaway websites. Beyond homogeneity in the broad contours of each case, both cases require an assessment of the same factual and legal prerequisites prior to substantive adjudication. Both suits require two initial determinations: did Plaintiffs (or their client CAST) access or use Defendants' websites and, if so, are they subject to the sites' terms and conditions. Analysis of the factual issue of use or access is a prerequisite for both courts. Likewise, both courts would have to conduct the legal analysis of whether browsewrap terms and conditions bind the Plaintiffs (or their client CAST). The similarity of these actions is unambiguous. As such, the Court seeks to avoid what "could easily result in an unnecessary entanglement between the two tribunals." *Riley*, 371 Fed. Appx. at 403 (internal quotations omitted).

Fourth, it is unclear to the Court if the Plaintiffs' federal suit is mere procedural fencing. Procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum. . . ." *Gross*, 468 F.3d at 212. Although the Plaintiffs filed this case a mere three days after Defendants filed suit in Texas, at oral argument, Plaintiffs indicated they filed the Virginia Suit before they had any knowledge the Texas Suit had been filed. Although at least one court has previously found filing a mere three days after the state action indicative of a "strategic decision

9

to seek what it perceived to be a more favorable playing field," the Court takes the Plaintiffs at their word. *Alfa Laval*, 2010 WL 2293195, at \*4. The Court finds no clear proof of procedural fencing.

Nonetheless, the fourth and final *Kapiloff* factor is not dispositive and does not negate the first three *Kapiloff* Factors, which overwhelmingly support staying the declaratory requests in this action. *See id.* (noting the fourth "*Kapiloff* factor is probably of lesser significance. . . ."); *Auto-Owners Ins. Co. v. Waters*, No. 3:09-CV-134, 2009 WL 3378657, at \*6 (E.D. Va. Oct. 20, 2009) (staying a matter despite "no clear proof of procedural fencing."); *see also id.* at \*4-6 (staying a matter despite finding only the third *Kapiloff* factor, entanglement, weighed in favor of stay).

### b. Stay of the entire matter is appropriate because the nondeclaratory claims are dependent upon adjudication of the declaratory claims

Additionally, the Court finds stay of the remaining nondeclaratory counts appropriate. Resolution of the nondeclaratory counts is dependent upon the Court's resolution of the declaratory counts. *See Riley*, 371 Fed. Appx. at 404 n.2 (finding the inclusion of "dependent" nondeclaratory "requests for relief does not suffice to remove a plaintiff from the ambit of the *Brillhart/Wilton* rule"); *Alfa Laval*, 2010 WL 2293195, at \*5 (finding the presence of nondeclaratory claims did not change the Court's conclusion that stay was appropriate under *Brillhart/Wilton* "when the question of liability is driven by the relief fashioned on the declaratory claims"). The nondeclaratory claims allege the Demand Letters and other Homeaway communiques disrupted the Plaintiffs' current and future business, amounting to tortious interference with current and prospective contracts, defamation, and a violation of the Virginia Consumer Protection Act. Compl. ¶¶ 64-84. These nondeclaratory counts, which are asserted as counterclaims in the Texas Suit, are premised upon the Court finding in favor of the Plaintiffs on

10

each of the declaratory claims. Accordingly, the Court finds that comity, judicial efficiency, and federalism support staying the dependent nondeclaratory claims in addition to the declaratory claims pending their resolution in the Texas Suit.[11]

### IV.    Conclusion

For the foregoing reasons and those stated in open Court, the Court will stay all proceedings in this matter pending adjudication of the parallel Texas Suit. An appropriate Order will accompany this Memorandum Opinion.

December 21, 2011
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

---

[11] It is not this Court's intention to thwart VRCompliance and Eye Street's access to a federal forum for resolution of their federal claims or additional claims that properly invoke the Court's jurisdiction. Rather, it is this Court's view that present considerations of comity, judicial efficiency, and federalism weigh in favor of stay. At numerous points before this Court, Homeaway evinced its assent to removal of the Texas Suit. And at no point did the Plaintiffs argue removal of the Texas Suit would have been improper. That said, so long as the forum is proper, this Court cannot and does not wish to dictate how the Parties seek resolution of their dispute. Accordingly, the Court declines Homeaway's invitation to dismiss this suit in its entirety and stays this matter so that a federal forum for resolution of the Plaintiffs claims will remain available following resolution of the parallel Texas Suit.